## Benjamin Hilton *vs.* Joseph Southwick.

A promise to pay upon the performance of an act by which the party is injured, becomes binding when the act is performed.

If the payee of a negotiable note give his assent by his signature to an assignment, wherein provision is made for the payment of the note, or of a part of it, this does not destroy the negotiable character of the note, or destroy a contract made in contemplation of a sale of it, and it may be afterwards legally transferred, although the effect may be to make the signature to the assignment ineffectual, unless adopted by the indorsee.

If there appears the least attempt on the part of the prevailing party to seek and influence a juror who tries the cause, the verdict will be set aside.

Where the jury were dismissed from *Saturday* evening until *Monday* morning during a trial, and the prevailing party conveyed a juror, living on the road passed by the party, home in his wagon several miles on *Saturday* evening, and where no conversation relative to the cause took place; *it was held*, that although the conduct was indiscreet and incorrect, and if persisted in after a knowledge of its impropriety, would afford sufficient cause for a new trial, yet that the verdict in this case might be regarded as having been found by a jury free from improper influences, and that judgment might be rendered thereon.

Assumpsit on an agreement, of which a copy follows. "*July* 16, 1829. Whereas *Benj. Hilton* is about transferring a note he has against me for $2524,34, I hereby agree that in case I obtain a discount on said note in the payment, that I will account and pay to said *Hilton* the amount which I get discounted thereon.

"*Joseph Southwick.*"

It appeared at the trial before Shepley J. that the plaintiff, in *April*, 1829, had sold to the defendant a quantity of logs, and had taken his note for $2524,34, payable half in *June*, and half in *September*, in payment therefor. Before the first payment fell due, the defendant became embarrassed and assigned the logs thus purchased, with a large quantity purchased of others, to assignees in trust to pay or apply each lot of logs to the payment of the note or notes given for them, either by returning the logs and taking up the notes, or by manufacturing them and applying the proceeds, less the expenses, in payment of the notes. The plaintiff was named in the assignment. Before he had given his assent to it by signing it, on *July* 16, 1829, the contract declared on was made. On the following day, *July* 17, the plaintiff sold the note at a dis-

count of 33⅓ per cent., and on that day signed the assignment. Whether that sale was made to the defendant through the agency of *Homans* and *Brown*, the assignees; or to them on their own account; or to *Homans* alone for his sole account; was a subject of controversy between the parties, and much testimony was introduced on each side, which was submitted to the jury. It was also contended that if *Homans*, or *Homans* and *Brown*, purchased the note on their own account, the defendant obtained a discount in paying it, and this was denied, and the evidence on this question was submitted to the jury.

The counsel for the defendant contended at the trial: —

1. That the plaintiff could not recover because the contract was not binding for want of a consideration. This objection was overruled, and the proof in relation to the facts admitted.

2. That if the defendant himself purchased the note by the agency of others, he did not thereby obtain a discount within the meaning and terms of the contract, and the plaintiff could not recover. This objection was overruled.

3. The plaintiff by signing the assignment on *July* 17 repudiated and annulled the contract of *July* 16, declared on, and could not recover. This objection was also overruled; and the jury were instructed, that if in other respects the plaintiff had proved his case, he might recover, notwithstanding these objections. The verdict for the plaintiff was to be set aside, if the ruling or instuctions were erroneous.

After the verdict, at the same term, the defendant filed a motion to set aside the verdict, because it was against evidence, and because "the said *Hilton* discharged a passenger whom he had agreed to carry home on *Saturday* evening, while this cause was on trial, it having been commenced on *Saturday* in the afternoon, and terminated the *Tuesday* next following, and that said *Hilton* after discharging said passenger took into his wagon, and carried home to *Madison*, one of the jurors who tried said cause. And also that *Samuel H. Hilton*, who was a son of the plaintiff and a witness in said cause, was seen walking arm in arm with another of the jurors after the cause was opened for trial, and before its termination, and did converse with the juror while so walking."

The juror testified in substance, that he came down to Court with his own horse, and sent it home, and it had not come back; that on *Saturday* evening he wished to return home, and inquired if there was any way of his getting home, and *Hilton's* son said his father, the plaintiff, would carry him, and that he did ride home with *Hilton*, and that he lived on *Hilton's* road home, and within about two miles of him. The juror stated, that he could recollect no conversation whatever with *Hilton* at that time, but that if any thing had been said about the case on trial, he thought he must have recollected it, as he remembered that the Judge cautioned them against conversing, or hearing conversation, on the subject. It also appeared, that the same juror, before the cause came on for trial, during the term, went home with the son of the plaintiff, who was a witness, and staid over night with him.

*Wells* and *H. A. Smith*, for the defendant, argued in support of the objections made at the trial, and cited 4 *Johns. R.* 84; 12 *Johns. R.* 190; 3 *Johns. R.* 534; *M'Culloch v. Eagle Ins. Co.* 1 *Pick.* 278; 3 *T. R.* 684. On the argument in support of their motion for a new trial, they cited *Cottle v. Cottle*, 6 *Greenl.* 140; *Benson v. Fish*, 6 *Greenl.* 141; *Sargent v. Roberts*, 1 *Pick.* 337.

*Boutelle* and *Tenney* argued for the plaintiff, and cited 12 *Johns. R.* 190, 397; 1 *Caines*, 584; *Train v. Gold*, 5 *Pick.* 380; *Robertson v. Gardner*, 11 *Pick.* 150; *New-England Bank v. Lewis*, 8 *Pick.* 113; *Kempton v. Coffin*, 12 *Pick.* 129; *Williams' College v. Danforth*, 12 *Pick.* 541; 1 *Saund.* 211, note 2; 2 *Saund.* 137; 1 *Com. on Con.* 16.

The opinion of the Court was drawn up by

SHEPLEY J. — The contract recites, that the plaintiff was about transferring the note, and the defendant promises to account to him for what he should get discounted in the payment of it. That it operated to induce the plaintiff to sell, and that it was so designed, there can be little doubt. The plaintiff on the following day sold the note at a large discount.

A promise to pay upon the performance of an act, by which the party is injured, becomes binding, when the act is performed.

*Train* v. *Gold*, 5 *Pick.* 385 ; *Kempton* v. *Coffin*, 12 *Pick.* 129. The contract in substance provides, that if the defendant was not obliged to pay all that should be due, he would pay sufficient to the plaintiff to make up the whole amount. It does not provide, that the discount should be obtained in any particular mode to make it obligatory on the defendant to pay it to the plaintiff. By signing the assignment the plaintiff did not destroy the negotiable character of the note, which might afterward be legally transferred. The effect might be to make his signature to the assignment inef-fectual unless adopted by the indorsee, but not to destroy a con-tract made in contemplation of a sale.

There is a motion for a new trial arising out of the alleged im-proper conduct of the plaintiff in his attentions to one of the jurors. In the case of *Cottle* v. *Cottle*, 6 *Greenl.* 140, where the party conveyed a juror to the house of his friend and entertained him, it appears to have been done not as an act of ordinary and neighborly kindness, while in this case, although under the circum-stances indiscreet and incorrect, it does appear to have been of that character. In that case, it appears from the remarks of the Judge in delivering the opinion, that the party had conversed with the juror respecting the suit, for it is said, " he sought his society, and attempted to impress his mind with the justice of his claim." And that the party sought the juror in an unusual manner. These considerations were justly regarded as sufficient to require the ver-dict to be set aside. In this case the juror must be understood in his testimony as denying that he had any conversation with the plaintiff about the action, and as stating that the occasion of his riding home with the plaintiff was, that he had ordered his horse to be sent to him, that it had not arrived when the jury was discharged for that day, that he inquired for a passage and was in-formed by the plaintiff's son, that his father could carry him home. Although this took place while the action was on trial, the plain-tiff does not appear to have sought for the juror, or to have con-versed with him respecting it ; and he did not go out of his own way to accommodate the juror. And yet the exercise of these acts of kindness under such circumstances are suited to produce suspi-cion that the juror had been influenced by improper motives and the Court must feel a want of perfect confidence as much to be de-

plored by it, as by the losing party. It has however come to the conclusion, not without doubt and hesitation, that the verdict may be regarded as found by a jury free from improper influences. But if such practices are continued, either directly or through the intervention of relatives or agents, they will afford just reason for the conclusion, that there may be an undiscovered influence which must require verdicts found under such circumstances to be set aside. If there appeared the least attempt on the part of the plaintiff to seek and influence the juror, the verdict would be set aside. But without any such attempt, there does not appear to be sufficient cause for it.

*Judgment on the verdict.*