## McIlvaine *vs.* Wilkins.

During the trial of a cause, a juryman said to a witness for the plaintiff, that "they could throw the costs of the action upon the defendant, of course;" to which the witness answered, that "they could, of course." The jury found for the plaintiff, and, upon a motion for a new trial for the above reason, it was *held* that although such conduct on the part of the juror was a violation of his public duty, yet as it did not show any bias or prejudice for or against either of the parties, it was not a sufficient cause for granting a new trial.

But if the plaintiff had been privy to such conversation, the verdict should be set aside.

The plaintiff offered in evidence his book of accounts, with his suppletory oath; but, on his cross-examination, it appearing in evidence that the articles charged were delivered by a third person, the book was rejected by the court. In the course of his cross-examination, he was inquired of by the defendant's counsel, touching the case generally.—*Held*, that the plaintiff's counsel, although the book had been rejected, might examine him in explanation of his evidence, relating to the case generally, and that his testimony might be considered by the jury, in connection with the other evidence in the case.

In assumpsit for goods sold and delivered, the jury should allow interest by way of damages for the detention of the debt, upon the amount they find due, from the time of a demand of payment, if one be proved; or if there be no demand, from the commencement of the suit.

Assumpsit, for goods sold and delivered, according to an account annexed to the writ.

In order to prove the delivery of the articles charged in the account, the plaintiff offered in evidence his book of accounts, with his suppletory oath. Upon his cross-examination it appeared that the articles were delivered by a third person, whereupon the book was rejected as evidence by the court. In addition to the inquiries made by the defendant's counsel touching the delivery of the articles, he put further questions relating to the case. The court thereupon ruled that the plaintiff's counsel might examine the plaintiff, for the purpose of explaining any answer given by the plaintiff, to the questions put by the defendant's counsel. It was contended by the defendant, that upon the rejection of the plaintiff's book, the testimony of the plaintiff to the delivery of the articles, and his evidence generally, given in answer to the inquiries put by the defendant's counsel, and in explana-

tion of such answers, were incompetent to be submitted to the jury. But the court instructed the jury that they might weigh his testimony, and consider it in connection with the other evidence in the case.

The court also instructed the jury, that they might allow interest on such sum as they should find due the plaintiff, from the time payment was demanded, if it were proved that a demand was made ; if not, then they might allow interest on such sum from the date of the writ. The defendant's counsel excepted to the instruction on both the above points.

The jury returned a verdict for the plaintiff, and the defendant moved for a new trial, for the following reason : He proved that during the trial, Joel Wilkins, a witness for the plaintiff, had a conversation, in relation to the case, with Amos Parmenter, one of the jury, in the course of which Parmenter said to Wilkins, that " they could throw the costs of the action upon the defendant, of course ;" to which Wilkins answered, that " they could, of course."

*Farley*, for the plaintiff.

*Baker*, for the defendant.

GILCHRIST, J. The defendant, in this case, has moved for a new trial, on account of the conversation between the witness and one of the jury. It is singular, that notwithstanding the efforts made by the court to impress upon the jury the necessity of their entire freedom from suspicion of partiality, applications for new trials, on account of alleged misconduct of the jury, are so frequent. The injunctions by the court upon the jury are, invariably, that they do not converse among themselves upon the subject of the trial, until they retire to deliberate upon the verdict ; that they hold no conversation with any persons whomsoever about the case, and that they do not remain in the presence of other

persons who are discussing the trial. They are reminded that it is not only necessary that their verdict should be impartial, but that the parties and the public generally should believe it to be unbiassed, in order that the trial by jury should not fall into disrepute. But, scattered throughout the pages of the American and English reports, there are far more cases than there should be, of applications for new trials, founded upon evidence tending to show, sometimes, attempts by a party to prejudice the jury in his favor; and sometimes, conduct in jurymen indicative either of partiality, or of such a forgetfulness of the important responsibilities resting upon them, as tends to weaken that confidence which the public ought to feel in the honesty of their decisions. The verdict of a jury ought to be, not only a true verdict upon the evidence, but it should be above suspicion; and any unguarded and careless conduct in a juror necessarily subjects him to the suspicion of the losing party.

We should, without hesitation, set aside this verdict, had there been any reason to suppose that the plaintiff was privy to the conversation between the juror and the witness. The safest rule is, that the verdict should always be set aside, if there appear the least attempt by a party to influence the juror. *Hilton* vs. *Southwick*, 17 *Maine* 303. It is not necessary, however, that the plaintiff should be privy to any corrupt conduct in the jury, to authorize us to set aside a verdict; because if the jury, or any of them, be corrupt, we should not permit a verdict to stand, however innocent the party might have been. The evidence here shows careless and unguarded conduct on the part of the juror; and perhaps more than that. No man who places himself in so suspicious a situation as Mr. Parmenter did, can complain if he be suspected. By what sophistry can a juror, sworn to give a true verdict according to law and the evidence given him, reconcile his reason and conscience to such conduct, and permit himself to listen to *ex parte* statements, which he would not dare to hear, if he thought that third persons

McIlvaine *v.* Wilkins.

heard them likewise ? And yet, reprehensible as the conduct of Mr. Parmenter was, it may gratify him to learn that the court consider him rather as violating his duty to the public and to his own conscience, than his duty to the parties in the cause. Our present inquiry, however, is, whether the remark indicate such a partiality for the plaintiff, as to convince us that the defendant has not had a fair trial. And we do not think it does indicate such a partiality. It was an interrogatory, addressed to the witness, and which implied rather that the juror had not made up his mind, than that he had. It shows that the juror was willing to converse upon the subject, and to hear what others had to say ; but it does not prove that he was biassed in his opinions, or corrupt in his motives. There are some very pertinent remarks by Shaw, C. J., on this point, in the case of *The Commonwealth* vs. *Roby*, 12 *Pick.* 520. He says, " where the irregularity consists in doing that which does not and cannot affect the impartiality of the jury, or disqualify them from exercising the powers of reason and judgment, as where the act is contrary to the ordinary forms, and to the duties which jurors owe to the public, the mode of correcting the irregularity is by animadversion upon the conduct of the jurors ; but such irregularity has no tendency to impair the respect due to the verdict." In this case, we think a construction may be put upon the juror's conduct, favorable to his innocence. But still, even upon this construction, if he were present, or so long a time had not elapsed since the trial, we should probably direct that he be called before the common pleas, to show cause why he should not answer for a contempt. But this is a matter within the discretion of the court ; and, under the circumstances, we do not think the public interest requires such a proceeding. Nor is it our opinion, however much Mr. Parmenter may have exposed himself to censure, that the verdict should be set aside ; and we think the motion should be overruled.

The defendant also excepts to the instructions of the court

McIlvaine *v.* Wilkins.

to the jury, that they might consider the evidence of the plaintiff in connection with the other testimony in the case.

The principle governing cases of this character is distinctly laid down in *Eastman* vs. *Moulton*, 3 *N. H. Rep.* 156. "The party, when called, is in the first instance permitted to state only, that the book produced is his book of original entries ; that the charges are in his hand writing ; that they were made at the times they purport to have been made, and at or near the time of the delivery of the articles, or of the performance of the services. He may, however, be cross-examined by the other party ; in which case his answers become evidence, and he is entitled to give a full explanation of any matter in relation to which an inquiry is made on the cross-examination. It is reasonable and proper that he should be made a witness, as far as the opposite side chooses to make him one ; and that, as far as he is made a witness, he should be at liberty to give a full explanation."

If the defendant choose to make his opponent a witness as to the merits, he certainly should have the privilege of being cross-examined as to the merits. As soon as it appeared that the articles were delivered by a third person, and the book was rejected as evidence, the defendant should have stopped, if he did not wish to make the party a witness in chief. But he chose to go farther, and he must take the consequences of pursuing his inquiries. He wished to have the entire control of the witness ; to elicit from him such facts as he could, and then object that he was not competent, because the articles were delivered by a third person. He would thus preclude the plaintiff from any explanation of his evidence upon points which he could not testify to, except at the option of the defendant, and leave him just where in the case he saw fit, and with such an impression as he supposed would be the most unfavorable to him upon the minds of the jury. We think that the defendant must take the disadvantages of making his opponent a witness, with the advantages ; and after he has chosen to make him a wit-

ness in chief, he must suffer him to explain his statements, whether or not, upon other grounds, he be competent to testify. The jury, from the answers of the plaintiff to the defendant's questions, might have got certain impressions which might have some effect upon them, although they had been told by the court to lay his testimony out of the case ; and these impressions the plaintiff should have the same opportunity of removing which is granted to every other witness. Whether the book were rejected, or not, is immaterial. It was the plaintiff's right to explain his testimony ; and this right is independent of, and unconnected with, the question, whether the book were competent. His right to explain, is coëxtensive with the defendant's right to examine. As the defendant's right to make him a witness in chief is not taken away by proof of the incompetency of the book, neither is the plaintiff's right of explanation. We think the instructions of the court were correct.

Another question raised by the defendant, is, whether the instructions of the court to the jury, that they might allow interest upon the sum they should find due the plaintiff, from the time of the demand, or from the date of the writ, were correct.

It is somewhat extraordinary, that, upon a subject of so frequent occurrence, and one upon which the necessities of mankind would seem to require that the law should be early settled and understood, the authorities, both American and English, should be so numerous and so discordant. It is an extremely perplexing task to understand them ; for, in many instances, they seem to have been decided without reference to any general principle. The most elaborate and able investigation of them in the books, is to be found in the opinions of Savage, C. J., and Sutherland, J., in the case of *Reid* vs. *Rensselaer Glass Factory*, 3 *Cowen* 387, in the supreme court of New-York ; and in the opinion of Mr. Senator Spencer, in the same case, in the court of errors, reported in the 5 *Cowen* 587. It is unnecessary, in order to settle the

question before us, to analyze the numerous authorities, and attempt to reconcile them. In the case of *Calton* vs. *Bragg*, 15 *East* 226, Lord Ellenborough says: "Lord Mansfield sat here for upwards of thirty years; Lord Kenyon for above thirteen years, and I have now sat here for more than nine years, (a period of fifty-two years,) and during this long course of time no case has occurred where, upon a mere simple contract of lending, without an agreement for the payment of the principal at a certain time, or for interest to run immediately, or under special circumstances, from whence a contract for interest was to be inferred, has interest ever been given." This statement appears to be conclusive proof of the law of England at that time, and that the allowance of interest by the court, as an incident to the debt, is always founded upon the agreement of the parties. To the same effect also is the case of *Arnott* vs. *Redfern*, 3 *Bing.* 353.

There are two classes of cases in which interest may be recovered. The first is the class referred to already, where it is an incident to the debt, founded upon the agreement of the parties, and is a legal claim, which the court are bound to allow. The other class is that where interest may be allowed by a jury, in the nature of damages. In the case before us, there was no term of credit given, at the expiration of which the court will allow interest on the purchase money for the goods, as in *Mountford* vs. *Willes*, 2 *B. & P.* 337, nor was there any usage of the business in which the debt was contracted, according to the principle stated by Lord Mansfield, in *Eddowes* vs. *Hopkins, Dougl.* 376; nor was there any specified period within which the debt was to be paid, and which, upon default of payment at the day, carries interest, as in *Robinson* vs. *Bland*, 2 *Burrow* 1086; nor has the account been liquidated by being rendered to the debtor, and no objection being made to it, according to the rule stated in *Walden* vs. *Sherburne*, 15 *Johns.* 224; *Lintard* vs. *Graves*, 3 *Caines* 226; *Blaney* vs. *Hendrick*, 3 *Wils.* 205; *Boddam* vs. *Ryley*, 3 *Bro. C. C.* 3, and various

McIlvaine *v.* Wilkins.

other cases to be found in the books. Abbot, C. J., in *Higgins* vs. *Sargent*, 2 *B. & C.* 348, says that "it is now established, as a general principle, that interest is allowed by law only upon mercantile securities; or in those cases where there has been an express promise to pay interest; or, where such promise is to be implied from the usage of trade, or other circumstances." Mr. Senator Spencer, 5 *Cowen* 608, also says, that "its allowance by the courts as an incident to the debt, and invariably following it, is founded solely upon the agreement of the parties."

Still, there are decisions of authority, the principle of which would seem to be applicable here, and render the interest a legal claim. Although it has been often stated that interest is not recoverable for money owing for goods sold and delivered; *Blaney* vs. *Hendrick*, 3 *Wilson* 205; *Eddowes* vs. *Hopkins*, *Dougl.* 376; still it is said by Lord Thurlow, in *Boddam* vs. *Ryley*, 2 *Bro. C. C.* 3, that "all contracts to pay undoubtedly give a right to interest from the time when the principal ought to be paid." Here, there was no term of credit. The money for the goods was payable on demand, and ought then to have been paid. So in *Gammell* vs. *Skinner*, 2 *Gallison* 45, it was held that a demand of payment of an unsettled claim for wages, being equivalent to the rendering of an account, entitles to interest from such demand; as, then the debt is liquidated, due and payable. If this be true, a demand of payment of an unsettled claim for goods sold would seem equally to be a liquidation of the demand, although a liquidation of an account is stated in *Walden* vs. *Sherburne*, 15 *Johns.* 224, to be a rendition of it, without objection by the debtor. And in *Barnard* vs. *Bartholomew*, 22 *Pick.* 291, which was assumpsit for money paid, and for professional services, and which came before the court upon the report of an auditor, interest was allowed *by the court* upon a demand, upon the ground that it was due upon a neglect to pay a debt after a special demand. It has been held in this court, that interest

McIlvaine *v.* Wilkins.

is due on money received for property wrongfully converted, *Chauncey* vs. *Yeaton*, 1 *N. H. Rep.* 151 ; upon a judgment, *Hodgdon* vs. *Hodgdon*, 2 *N. H. Rep.* 169 ; upon a collector's bond, if it appear that he made use of the money, or unreasonably neglected to pay it over, *Hudson* vs. *Tenney*, 6 *N. H. Rep.* 456 ; upon the judgment of a justice of the peace in another state, where a recovery is had upon it in this state, *Mahurin* vs. *Bickford*, 6 *N. H. Rep.* 567 ; and upon the penalty of a probate bond which the obligors have unjustly detained, *Judge of Probate* vs. *Heydock*, 8 *N. H. Rep.* 491.

It is evident, from this brief statement of some of the prominent authorities, that there is much conflict among them as to the cases where the court *must* allow interest as a matter of law, and as incident to the debt. But the instruction of the court, in this case, is correct, if the interest be a legal claim, or if it be competent for the jury to allow it by way of damages for the detention.

It is said, by Mr. Senator Spencer, in the case above referred to, and it is undoubtedly true, that much of the difficulty upon the subject of interest, has arisen from the confusion and mingling of those cases where the court *must* allow interest, with those where the jury may allow it. The jury were told that they might allow it after a demand, or from the date of the writ. This instruction was correct. The duty to pay, there being no special contract, arose upon the demand ; or, in the absence of a formal one, upon the commencement of the suit, which is a demand. If the money be not paid then, the jury may properly, and should, give interest upon the amount due, by way of damages for its detention.

In an anonymous case, reported 1 *Johns.* 315, it is held that juries have in many cases a discretion to allow interest by way of damages, according to the circumstances of the case, and that they might allow it on the amount of a partial loss upon a policy of insurance, if they saw fit. So, in *Ed-*

*dowes* vs. *Hopkins, Dougl.* 376, Lord Mansfield held, that though, by the common law, book-debts do not, of course, carry interest; yet, in cases of long delay, under vexatious and oppressive circumstances, it may be allowed, if a jury, in their discretion, shall see fit to allow it. In *Entwistle & a.* vs. *Shepherd & a.,* 2 *T. R.* 78, which was debt upon a judgment, Buller, J., said it was a question for the jury whether they would give interest by way of damages. In *Bann* vs. *Dalzell,* 3 *C. & P.* 376, it was held by Lord Tenterden that whether interest should be recovered upon an Irish judgment, was a question for the jury; and if they thought the plaintiff had been diligent, and had taken proper steps to find his debtor, they might allow it. In *Craven* vs. *Tickell,* 1 *Ves. Jr.* 60, the lord chancellor said: " From conversation I have had with the judges, interest is given, either by the contract or in damages, upon every debt detained." And in the case of *Arnott* vs. *Redfern,* 3 *Bingh.* 353, Lord C. J. Best, quoting the above words, says: " From these words it appears there are two principles upon which interest is given in our courts: first, where the intent of the parties that interest should be paid, is to be collected from the terms or nature of the contract; secondly, where the debt has been wrongfully detained from the creditor." And he also adopts the principle stated in *Hillhouse* vs. *Davis,* 1 *M. & S.* 169, that although it be not due *ex contractu,* a party may be entitled to damages to the amount of interest, for any unreasonable delay in the payment of what is due under the contract; and he makes the following just remark :— " Our law would not do what it professes to do, namely, provide a remedy for every act of injustice, if it did not allow damages to be given for interest where a creditor has been kept out of his debt (he using all proper means to recover it) by his debtor." But Lord Tenterden, in *Page* vs. *Newman,* 9 *B. & C.* 378, thinks that the case of *Arnott* vs. *Redfern* goes rather too far.

In this case, there being no term of credit upon the goods,

McIlvaine *v.* Wilkins.

the price was payable immediately. If, upon a demand, it were not paid, it is a case of a debt wrongfully detained; and still more so, if the creditor be driven to an action; and upon such a debt there seems to be no objection to the allowance of interest by the jury. The better rule is to be deduced from the decision in *Gammell* vs. *Skinner*, 2 *Gall.* 45, that interest is due after a default to pay upon demand made; or, if no special demand be proved, after the commencement of the suit; and this rule was recognized as the practice in this state, in *Mahurin* vs. *Bickford*, 6 *N. H. Rep.* 572.

*Judgment on the verdict.*