## ALLEN, CUMMINGS & CO. *v.* ALDRICH.

If goods are furnished to a wife while living separate from her husband, under circumstances that might not make the husband liable, but the husband afterwards takes the goods home and agrees to pay for them, he will be bound by his promise, notwithstanding he may have been induced to make it by the deception of the wife practiced upon him; otherwise, if the vendor participated with the wife in the fraud.

If a husband abandon his wife, or if they separate by consent, without any provision for her support, or if he sends her away, or by his improper conduct compels her to leave his house, he is liable for necessaries furnished to her during the separation; but not so, if she leaves without sufficient cause and against his consent.

It is the practice in this State to submit, with the assent of the parties, specific questions to a jury, when, in the opinion of the court, it is advisable so to do and when such questions are proposed to be submitted, it will be taken for granted that the parties assent, unless they object at the time, and before the jury retire.

The giving of written instructions to a jury upon questions of law, at their request, after they have retired to their room, is matter of familiar practice in this State, and a verdict will not be disturbed on that account.

If a party attempt to influence a juror, or conduct himself out of court at a place and in a manner calculated to have such influence, the verdict in his favor will be set aside.

A verdict which is so uncertain that it cannot be clearly ascertained whether the jury intended to find the issue or not is bad. But a verdict is not bad for informality, if the finding of the matter in issue may be concluded from it.

ASSUMPSIT, on an account annexed to the writ, amounting to $51,85 debt, with a credit of $14,76.

The plea was the general issue, with a payment into court of five dollars under the general rule.

The case had been referred to an auditor, whose report was laid before the jury as *prima facie* evidence of so much of the claim as he allowed; being $46,57. The credit being deducted, left a balance of $25,81.

The controversy between the parties related chiefly to certain items of the account charged under date of October 4, 1850, amounting to $17,01, and other small articles charged between October 5, and October 22, of the same

year, amounting to $1,89; and also a trunk, charged November 12, at $6, making in all $24,90.

It was agreed that these articles were sold and delivered to the wife at a time when she was living separate and apart from her husband; and the plaintiffs claimed that the husband was chargeable for them, because they were necessaries for the wife and her infant children, whom he had driven from his house by ill treatment.

The defendant contested his liability, because he denied any ill treatment of his wife, and because the articles were not necessaries for her, and not necessaries for the children, whom, he contended, she had wrongfully taken from his house.

The plaintiffs also claimed that the defendant had ratified the purchases made by his wife, by taking the goods into his possession with full knowledge of all the circumstances, and carrying them home with his wife and children.

The defendant contended that he was not bound by these acts as a ratification, because he was induced to take the wife home with the goods, by reason of a compromise with the wife, which, on her part, was entirely fraudulent, she having left his house in three days after, with a part or all of these goods and many other articles. Both parties introduced evidence tending to sustain their respective positions as above stated.

The defendant then offered to prove that the remote cause of his wife's leaving him, was her ill treatment of him; a quarrel between them having begun in June and continued till she left in October. The court ruled that the cause of the quarrel between the husband and wife, and the history of their previous difficulties, was wholly immaterial, and that no evidence on the subject was admissible except that which had a direct relation to the alleged ill treatment of the husband in October, which was the alleged cause of her leaving, and that it was immaterial which was in fault or

most in fault as to their previous difficulties. To this ruling the defendant excepted.

Upon the point as to the right of the wife to leave the husband's house so as to render him liable for necessaries, the court charged the jury that the right to leave the house depended upon the ill treatment of the husband; that no rule could be laid down as to what constituted such ill treatment; that it might consist of blows, violence, such as choking, throwing upon the ground, and every species of personal outrage, in threats and abuse of every kind, of which a jury must judge; that no better rule could be given to the jury than to consider if they would feel that a daughter or sister of theirs ought to remain in the house of a husband who had so treated her.

The counsel for the defendant requested the court to charge, " that the father is by law the guardian and keeper of the children; that the mother had no right to take them from his custody, in the absence of any authority from the court or the judges, and that the wife had in this case no power to make the husband liable for the goods bought for the children." The court did not so charge, but stated to the jury that " if the husband ill treats his wife, so as to drive her from his house, if he ill treats her so that she has a right to leave his house, she has a right to buy necessaries for herself; and if she has an infant child, she has a right to take that with her, and necessaries for the child are necessaries for her."

The counsel for the defendant further requested the court to instruct the jury that if when the wife returned to the defendant, and he carried home the goods, she returned in fraud, not intending to remain, and took the goods away when she left, the defendant was not thereby made liable; and also that the defendant would not be made liable if the plaintiffs had notice of the fraud or in any way participated in it. But the court did not charge the jury in those terms, but instructed them, that if they should find fraud in the

wife proved, then they would inquire whether the plaintiffs had anything to do with that fraud, because if they had not, the fraud would be nothing to them, and they would still be entitled to a verdict, however fraudulent the wife might have been. That if they should disbelieve the evidence in regard to the defendant's taking the goods home as stated, or believe that the plaintiffs were parties to some fraud practised by the wife, they would then have occasion to look at the evidence relative to the wife's leaving her husband's house, and at the necessity she had for these goods. To these instructions the defendant excepted.

When the jury retired to consider the case they were desired by the court to return written answers to the following questions:

1. Did the husband agree to pay for the goods, and knowingly carry them home to his house to be used in his family?

2. Was his wife guilty of any such fraud upon him as would destroy his agreement at the settlement?

3. Had Allen & Cummings any participation in that fraud? Were they parties to that fraud, if any?

4. Did the defendant so ill treat his wife as to justify her in leaving his house, and living away from him?

5. Were the goods in question necessaries for the wife and her infant child or children?

The jury having been out for some time, sent to the presiding judge, during the recess, a note, as follows:

"The jury agree that Aldrich did agree to pay for the goods, and also that Allen & Cummings had no participation in the fraud, if there was any. Did the court so charge the jury that this would render a verdict for the plaintiffs?" At the foot of this note the presiding justice wrote as follows: "The charge was so." "Please return this with the papers."

These facts were not made known to the defendant or his counsel until after the verdict was returned.

The jury were instructed that if they found a verdict for the plaintiffs, they might add the five dollars paid into court to the other credits, and deduct them from the plaintiffs' claim, as allowed by them, and find their verdict for the balance.

The jury returned a verdict as follows :

" GRAFTON, ss.    *Western Judicial District, Court of Common Pleas, September Term*, 1853.

In the action, *Allen, Cummings & Co.* v. *John T. Aldrich*, the jury find a verdict for the plaintiffs, and assess damages in the sum of twenty-three dollars nineteen cents, after deducting five dollars tendered into court.

JESSE MARTIN, Foreman."

It appeared that the jury came to no agreement in regard to the second, fourth and fifth questions which were specifically submitted to them.

It appeared, also, that about a year after Mrs. Aldrich left her husband the second time, as before stated, she returned to live with him again, and has since lived with him.

The defendant moved that the verdict might be set aside on account of the exceptions taken to the rulings and charge of the court; also, because of an alleged defect in the verdict, and of the facts set forth in the affidavit of Hiram Emerson, which, together with the affidavit of Austin Paddleford, was as follows :

" I, Hiram Emerson of Littleton, in the county of Grafton and State of New Hampshire, of lawful age, depose and say, that on the morning of the 30th of September, A. D. 1853, I was in the bar-room at Eleazer Smith's hotel in Haverhill.   There were several persons in there whom I did not know, and Mr. Greenleaf Cummings, (one of the plaintiffs,) and Mr. Paddleford of Lyman, one of the jurymen, were present.   Some conversation was being had by those present about the case that was then on trial, *Allen & Cum-*

*mings* v. *Aldrich*, and some one said, whom I did not know, that Aldrich would be liable if they were necessaries, and Cummings said that Aldrich kept a part of her clothing from her; then another person remarked, whom I did not know, that it would seem that she ought to have necessary clothing; and other conversation was had by persons present about the same case. During the time this conversation was being had it was remarked by some one that a juryman was present; but the conversation continued as before, or was not immediately stopped, and continued till I left the room."

Signed by the witness, and sworn to, September 30, 1853.

" I, Austin Paddleford of Lyman, one of the jurymen in the action Allen, Cummings & Co. *vs.* John T. Aldrich, depose and say, that I have seen and heard read the affidavit of Hiram Emerson, touching a conversation which he relates as taking place in Eleazer Smith's bar-room, on the 30th of September, 1853, at which time and place he swears I was present. If I was in said bar-room, at the time of any such conversation, I knew nothing of it, and did not hear a word of it. During the whole time of the trial of said cause before the jury, of which I was one, I did not hear one word said about the merits of said cause one way or the other, except what was said in the court-house, in the presence of the whole court, while I was sitting on the jury."

Signed and sworn to, October 5, 1853.

The case, as sent from the common pleas, embraced a very much longer statement than the preceding, but it is believed that sufficient is stated for the proper understanding of the matters decided.

*H. & G. A. Bingham* and *Hibbard & Bedel*, for the defendant.

1. The direction of the court, that no inquiry could be had or evidence introduced of any difficulties between Aldrich and wife, previous to the alleged ill treatment, seems contrary to the general rule pursued whenever it becomes material to determine the character of any particular act. As we understand the rule, the surrounding circumstances, in such cases, may always be shown ; and our proposition to show the character of the wife, and her previous treatment of her husband, and that the alleged abuse was brought upon herself by her own wrongful act, ought to have been entertained.

2. The rule suggested by the court to the jury, to enable them to determine whether the acts complained of were such ill treatment as justified the wife in leaving her husband, was directly opposed to the idea that juries are to exercise their judgment unbiased by feeling. It was, in fact, a direction to the jury to decide the case according to their sympathies, and not according to their calm, sober judgment, unclouded by malice or affection.

3. The charge as to the wife's right to the custody of the children of tender age, as against the husband, without a special order of court, was opposed to the common law as it has stood from the earliest times, and as it has been recognized in this State. *Hillsborough* v. *Deering*, 4 N. H. Rep. 86; *Pidgin* v. *Cram*, 8 N. H. Rep. 350 ; *Commonwealth* v. *Briggs*, 16 Pick. 203 ; *State* v. *Paine*, 4 Humph. 523 ; *Ward* v. *The People*, 3 Hill 395.

4. As to the question of fraud, we hold that if the defendant's taking the goods home was a fraud practised upon him by his wife, and if the goods were immediately afterwards taken from him by his wife, in execution of her fraud, there cannot be, either in law or equity, the slightest ground for the plaintiffs' recovering in this suit. *Bradley* v. *Obear*, 10 N. H. Rep. 477 ; *Tisdale* v. *Bailey*, 6 Iredell's Eq. 358. Especially should this be so, if the plaintiffs in any way participated in it, or had notice of it and adopted it.

5.   The direction of the court to the jury to return written answers to written questions, as to particular facts, was erroneous.   The trial was upon the general issue, and the questions were submitted to the jury by the court, on its own motion, and without the request or consent of either party.   When a case is tried upon the general issue, the court cannot submit a particular question of fact to the jury, to be found and returned with their verdict, except by consent of the parties.   *Walker* v. *Sawyer*, 13 N. H. Rep. 191.

6.   It was erroneous for the court to give written instructions to the jury after they had retired, unless with the knowledge and consent of the defendant.   *Sargent* v. *Roberts*, 1 Pick. 337; *Moody* v. *Pomeroy*, 4 Denio 115.

7.   The conversation carried on by one of the plaintiffs and others, knowingly in the presence of a juryman, is clear ground for setting aside the verdict; and the affidavit of the juryman that he did not hear it is no answer, as it amounts only to the fact that he did not recollect the conversation. During a long trial of eight or ten days it might have had its effect upon his mind without his recollecting it.   He might have forgotten the time and place where it was said, and, perhaps also that he had heard it at all.   Be that as it may, it is clear that the plaintiff, Cummings, was aware of the presence of the juryman, and encouraged and took part in the conversation, obviously with the view of influencing his mind.   *Perkins* v. *Knight*, 2 N. H. Rep. 474; *McIlvaine* v. *Wilkins*, 12 N. H. Rep. 474; *Tenney* v. *Evans*, 13 N. H. Rep. 462; *State* v. *Haskill*, 6 N. H. Rep. 352.

8.   The verdict is void for uncertainty.

*Rand*, for the plaintiffs.

The jury found that the defendant agreed to pay for the goods sued for, and knowingly carried them home to his house, to be used in his family.   This was enough to charge him.   The defendant, however, claims that he was induced to make this agreement, and take home the goods by the

Allen, Cummings & Co. v. Aldrich.

fraud of his wife practised upon him. But the jury have not found that there was any fraud, and further, they say, that if there was any, the plaintiffs had no participation therein.

The court charged the jury that if they found fraud of the wife proved, then they would inquire if the plaintiffs had any thing to do with the fraud; because if they had not, the fraud would be nothing to them; and they would be entitled to a verdict, however fraudulent the wife might have been. This ruling, we say, was correct, for two good reasons. The goods were purchased by Mrs. Aldrich, and charged to her husband, and he afterwards ratified what had been done, and agreed to pay for them. Now, in the first place, he cannot plead that he was induced to do this by the fraud of any third person, or by any third person's advice. The meaning of the well known maxim of law, that fraud vitiates every contract, must be that it is the fraud of the party or parties to the contract that vitiates it, and not of any one else. It must be the fraud of one seeking advantage from the contract. And in the next place, if the defendant could, in this case, allege the fraud of a third person as a defence, he could not that of his wife; for the wife lives with him now, and did at the time of the date of the writ, and has ever since. In law, they are one person, and no man can plead his own fraud.

EASTMAN, J. Quite a number of questions were raised upon the trial of this action, relating chiefly to the competency of evidence, which we have not deemed necessary to report, inasmuch as, according to our views, the decision of the case turns upon one or two points. Even some of the matters which are stated, have been reported merely that a more correct view of the controversy between the parties might be had.

The goods, for the payment of which this action was brought, were furnished by the plaintiffs to the defendant's

wife, while she was living apart from her husband, the separation growing out of difficulties between them. The husband subsequently took the goods to his house, under circumstances disclosed, a settlement, or pretended settlement of the difficulties between him and his wife having been made.

It was contended upon the trial that there was fraud practised by the wife, in the settlement between her and her husband; and further, that the plaintiffs were cognizant of it, and, therefore, the defendant was discharged from all liability on account of taking possession of the goods himself; but under the instructions of the court, the jury have found that the defendant agreed to pay for the goods, and knowingly carried them home to his house, to be used in his family; and they have also found that if there was any fraud practised in the settlement, so as to induce him to take the goods, the plaintiffs had no participation in it. The question was distinctly put to the jury, whether the husband agreed to pay for the goods, and knowingly carried them home to his house, to be used in his family; and the jury answered that he did. And the further question was put to them, whether the plaintiffs had any participation in any fraud of the wife upon the husband, or were parties to any such fraud, if any existed, and they had answered in the negative. Now it appears to us that this finding of the jury settles the rights of the parties to this suit; and that, consequently, the causes which led to the separation and settlement between the husband and wife, and all the evidence upon those points became immaterial. The property was taken by the defendant with a full knowledge of all that had transpired, and he promised to pay for it; and whatever deceptions may have been practised upon him by his wife, or whatever promises she may have made to induce him to take the goods, they had nothing to do with these plaintiffs. So long as they were not participators in,

or parties to the deception, it cannot vitiate the contract made by the defendant with them.

Did not the merits of the case turn upon the point which we have stated, we might have to inquire as to what circumstances will justify a wife in leaving her husband, and to what extent she may go in charging him with debts incurred by her during the separation. She might also have to inquire as to her power to take with her her children.

Without going into any critical investigation of these questions, we may state, in general terms, that if a husband abandons his wife, or if they separate by consent, without any provision for her support, or if he sends her away, or by his improper conduct compels her to leave his house, he is liable for her necessaries, and he sends credit with her to that extent. 2 Kent's Com. 124; *Harwood* v. *Heffer,* 3 Taun. 421; *Houliston* v. *Smith,* 3 Bing. 127; *Montague* v. *Espinasse,* 1 Car. & Payne 502; *Richardson,* C. J. in *Pidgin* v. *Cram,* 8 N. H. Rep. 350.

If a wife leaves her husband without sufficient cause, and without his consent and against his will, she carries with her no authority to pledge his credit for her support and maintenance. But where the wife resides separate from her husband, proof of her marriage with him, and that the articles furnished were necessaries for her support, will constitute *prima facie* evidence of the liability of the husband, and of his promise to pay, and the burden of proof rests upon the husband to show that her separate residence and want of means of support is through no fault on his part. *Rumney* v. *Keyes,* 7 N. H. Rep. 571.

If a husband, living in a state of separation from his wife, suffers his children to reside with the mother, he is liable for necessaries furnished to them, and she is considered his agent to contract for that purpose. *Rumney* v. *Keyes,* 7 N. H. Rep. 571. It must, however, appear that there has been a clear omission of duty on the part of the father,.

otherwise he will not be charged. *Pidgin* v. *Cram*, 8 N. H. Rep. 350.

But we will not, for the reasons already stated, pursue these inquiries any further.

The course adopted by the court, in putting specific questions to the jury, was not in violation of any rule of practice in this State. It is true, that where the cause is tried upon the general issue, the court cannot submit particular questions to the jury without the consent of the parties. *Walker* v. *Sawyer*, 13 N. H. Rep. 191. But where the parties assent it may be done. The labors of the jury are oftentimes facilitated by having the points in the case thus directly presented; and, as was said in *Willard* v. *Stevens*, 4 Foster's Rep. 271, it is no uncommon practice to submit specific questions to the jury, and to give them particular instructions, in order that the questions of law arising upon the case may be clearly presented, and the litigation thereby more speedily terminated. Usually, perhaps, when the court propose to give other than general instructions, the intention is stated to the parties that the objections, if any, may be suggested. But this we do not conceive to be necessary. As the matter is one of practice, and the objections, if raised, could be obviated at the time by a change of the instructions from special to general, we have no hesitancy in saying that the objection should be raised before the case goes to the jury. When, therefore, the court proposes to put specific questions to the jury, we think it should be taken for granted that the parties assent, unless they then object to the course proposed.

The giving of written instructions to the jury, after they had retired to their room, was also entirely in accordance with our practice, and the verdict cannot be disturbed on that account. Such communications are in the nature of new instructions, and, being returned into court by the jury, can be excepted to in the same manner as if they had been given in open court. *Shapley* v. *White*, 6 N. H. Rep. 172;

*School District* v. *Bragdon & al.* 3 Foster's Rep. 507. The case of *Sargent* v. *Roberts,* 1 Pick. 342, cited by the defendant's counsel, is not authority in this State. This was so stated in *School District* v. *Bragdon,* 3 Foster's Rep. 517.

The motion to set the verdict aside for alleged improper conduct, on the part of one of the plaintiffs, in the presence of one of the jurymen, cannot prevail. If it shall be made to appear that a party has attempted to influence a juror, or has conducted himself out of court, at a place and in a manner calculated to have an influence upon the minds of the jurors, the verdict will be set aside. This is well settled. *State* v. *Hascall,* 6 N. H. Rep. 352; *McIlvaine* v. *Wilkins,* 12 N. H. Rep. 474; *Hilton* v. *Southwick,* 17 Maine Rep. 303. But the facts disclosed by the affidavits of Emerson and Paddleford do not satisfy us of any such improper conduct on the part of Cummings. The affidavit of the juryman, Paddleford, in whose presence the alleged conversation is said to have taken place, entirely negatives the idea that any thing improper could have been said or done in his presence. His affidavit was taken only five days after the alleged occurrence, and it would seem almost incredible that he should have so totally forgotten the whole matter, if it had occurred in his presence. Either Emerson must have been mistaken in regard to Paddleford's having been present, or else the conversation must have been in so low a tone of voice as not to attract attention. It must have been done in a manner not calculated or intended to have an influence upon any of the jurymen.

Neither can the verdict be set aside for uncertainty, in the finding of the jury. A verdict which is so uncertain that it cannot be clearly ascertained whether the jury meant to find the issue or not, is bad. *Jewett* v. *Davis,* 6 N. H. Rep. 518; *Holman* v. *Kingsbury,* 4 N. H. Rep. 104; *Coffin* v. *Jones,* 11 Pick. 45; *Brunswick* v. *McKean,* 4 Greenl. 508.

But although a verdict is informal, and does not find the

issue in terms, yet if a finding of the matter in issue may be concluded out of it, it will be sufficient.   *Pettes & ux.* v. *Bingham, Exr.* 10 N. H. Rep. 514 ; *Foster* v. *Jackson,* Hobart 54, a ; *Porter* v. *Rummery,* 10 Mass. Rep. 64.

The jury, in this case, found generally a verdict for the plaintiffs, and assessed the damages.   They also found that the defendant carried the goods sued for to his house, and agreed to pay for them.   The agreement to pay was equivalent to a promise to pay, and there was no uncertainty in regard to the five dollars.   We have no doubt that there should be

*Judgment on the verdict.*