## WALKER *v.* LAIGHTON.

A husband who deserts his family and makes no provision for their support, is answerable for necessaries for them.

A husband who lives voluntarily apart from his wife, is liable for necessaries for his children residing with her.

A wife and children, living apart from the husband, lose all claim to charge him for necessaries, if they refuse to go to his house to live, upon his request, after he has made suitable provision for them there.

But such request will have no effect, if accompanied by threats or remarks showing insincerity.

So if no suitable provision is shown to have been made.

Notice in the newspapers not to trust a wife, will be of no effect as to those who had no notice of it.

The right of a party to recover for necessaries, delivered by his order to the wife of another, will not be affected by the person of whom they were ordered presenting a bill for them to the husband, without success.

ASSUMPSIT, for goods sold and delivered. The goods were described in a specification as provisions and other articles, furnished to the defendant's family, from June 23 to

December 24, 1853. The case was referred to an auditor, who reported the following facts.

Prior to February, 1853, the defendant, his wife, and three minor daughters, the eldest about eighteen years of age, resided together in his house on Vaughan Street, in Portsmouth. For some reason unknown to the auditor, the defendant, about that time, left his family and went and resided in another house with his mother, who kept house for him, in Fleet Street, and has never since resided with them. He did not inform his family, at the time, what his purposes were. Afterwards, he requested one Downing, a butcher, to furnish his family all they should want for their support; and on the 2d of February, 1853, said Downing so notified Mrs. Laighton, and supplied her till April 3d, 1853, when he ceased to do business or furnish any thing. Mrs. Laighton, before this, informed Downing she did not wish him to call again, and called upon him for nothing after April 3d. Downing had always the pecuniary ability to furnish all necessary supplies for such a family.

Until May, Mrs. Laighton procured supplies for herself and family of Dodge & Laighton and of W. J. Laighton, on her husband's account, as she had done in years before. Early in May, the defendant notified these traders to furnish her nothing more, and they refused to supply her further.

On the 2d of May, the defendant went to the house in Vaughan Street, and nailed up a sign with " to let " upon it, and told his wife and daughters to pack up their things, and he would send a carriage to take them to his house. He at the same time to told Mrs. Laighton that she need not expect any happiness, for she would have none; that he might take his family where he pleased, to Europe or to Illinois; that they must go where he said and see whom he pleased; that none of their friends should come to see them,—if they did he would shoot them on the spot; that he should have his authority if he died for it; that they

Walker *v.* Laighton.

must obey and respect him, go when he said and come when he said, but ask him no questions as to where or when. The family refused to leave the house. About May 7th, the defendant caused to be published in the Portsmouth Journal a notice, as follows :

" The subscriber, having provided at his own residence a home, and for the support of all persons who can claim of him a maintenance, hereby gives notice to the public that he will not pay any debts contracted against him after this date.

WILLIAM LAIGHTON.

May 7th, 1853.

After this, he refused to supply his family, when requested by his wife, saying that he had every thing at his house in Fleet Street, and they must come there. He, however, furnished his daughters some money for clothing to the amount of forty dollars. In August, he proposed to take his daughters to Mount Holyoke Seminary, but they declined to go. After this, his wife and daughters kept the doors of their house fastened to keep him out. The defendant afterwards furnished some small articles of provisions and fuel. But the auditor finds that the articles for which payment is claimed, were necessary articles for the support of such a family, and were used for that purpose. and that they were furnished by the plaintiff, by the order of Mrs. Laighton, who is his sister.

There was a charge for bread, as to which it appeared that it was furnished by the bakers to Mrs. Laigton, by the plaintiff's order, and was used by her family; that the bakers presented a bill for it to the defendant, who refused to pay it, and it is still unpaid.

Whether upon these facts the plaintiff is entitled to recover, is the question presented to the court.

*Rollins*, with *Emery*, for the plaintiff.

The plaintiff is entitled to the full amount of his claim.

I. From the auditor's report it appears that the defendant left his wife and family, without assigning any reasons for so doing. It does not appear that his wife or children gave him any cause or excuse for leaving them. He supported them for three months after he left them, and this, unexplained, is conclusive that no conduct on their part caused the defendant to leave his family. He afterwards, also, furnished some supplies, which also shows that neither before he left, nor afterwards, had they done any thing which had caused the separation.

The auditor finds that the supplies furnished were necessaries. The burden of proof, then, rests upon the defendant, to rebut his liability. *Rumney* v. *Keyes*, 7 N. H. Rep. 571, 580 ; *Pidgin* v. *Cram*, 8 N. H. Rep. 351, and authorities there cited ; *Batton* v. *Prentiss*, 2 Stra. 1214 and note; Macqueen on Husband and Wife 140,141 ; Bell on Husband and Wife 25; *Norton* v. *Fazan*, 1 Bos. & Pul. 226 ; *Lockwood* v. *Thomas*, 12 Johns. 250.

II. There was no proof that the place he had provided was such as their habits and condition in life entitled them to have.

III. The request, by the defendant, that she and her children should come and live with him, in the house he said he had prepared, does not excuse him, because the request was accompanied with such language, conditions and threats that his wife and children were not obliged to go and live with him, as he requested, and, apparently, it would have been dangerous for them to do so. *Reed* v. *Moore*, 5 C. & P. 200 ; Macqueen on Hus. and Wife 141 ; Bell on Hus. and Wife 25.

IV. The offer to furnish the supplies through Downing, cannot avail the defendant in this suit, 1. Because the supplies he was to furnish were those connected with his business as a butcher only. This is clear from the fact that the dry goods and grocery stores furnished supplies to the defen-

dant's family, by his order, during the time covered by the directions to Downing, and after he ceased going there with his cart. 2. Because Downing ceased entirely to furnish any thing before the plaintiff's bill began.

V. The notice published cannot avail the defendant, 1. Because no knowledge of it is brought home to the plaintiff. *Fredd* v. *Ewes*, 4 Harring. 385, (10 U. S. Dig. Hus. & Wife 30.) 2. If these circumstances authorized the furnishing of the supplies, no notice will exempt him from the liability. Macqueen on Hus. & Wife 142; *Dixon* v. *Hunell*, 8 C. & P. 117; *Harris* v. *Morris*, 4 Esp. 41.

*Hatch*, for the defendant.

BELL, J. The defendant, without cause, left his house and his family, and went elsewhere to reside. He thereby became responsible to furnish to his wife and children necessaries suitable to his standing and property. *Balton* v. *Prentiss*, 2 Stra. 1214; *Norton* v. *Fazan*, 1 B. & P. 226; *Robinson* v. *Grinold*, 1 Salk. 119; *Hodges* v. *Hodges*, 1 Esp. 441; 1 Selw. N. P. 230; *Evans* v. *Fisher*, 5 Gil. 569.

The wife must be regarded as living separately from her husband, by his consent and desire, in which case, if no sufficient provision for her support is secured to her by her husband, she has authority to pledge his credit for her maintenance. *Pidgin* v. *Cram*, 8 N. H. Rep. 350; *Lockwood* v. *Thomas*, 12 Johns. 248; *Dixon* v. *Hunell*, 8 C. & P. 717; *Read* v. *Legard*, 4 Eng. L. & E. Rep. 523; *Fredd* v. *Ewes*, 4 Harr. 385; *Frost* v. *Willis*, 13 Vern. 302; *Alna* v. *Plumer*, 4 Greenl. Rep. 258.

The husband, living voluntarily in a state of separation from his wife, is liable for the necessaries furnished to his children residing with her. By suffering them to reside with their mother, he constitutes her his agent, and authorizes her to contract debts for clothing and necessaries for them. *Rumney* v. *Keyes*, 7 N. H. Rep. 571; *Kimball* v.

*Keyes*, 11 Wend. 32; *Van Valkenburgh* v. *Watson*, 13 Johns. 480.

So far as is shown by the case, the defendant furnished some necessaries, and allowed his wife to obtain others, for which he paid till May, 1853. At that time he forbade those persons who had previously furnished her with articles needed for the family, to furnish her with any thing further on his account, and they declined afterward to supply her, and he published, in one of the newspapers printed at Portsmouth, where the parties resided, a notice that he had made provision for them at his residence, and that he would not pay for any articles furnished them on his account, and called upon his wife and daughters to go to his house to reside, which they refused to do.

The husband, who has causelessly deserted his wife, may in good faith seek a reconciliation, and if the wife, under such circumstances, refuses to live with him again without good cause, she becomes from that time the party in the wrong, and has no longer any authority to pledge his credit, even for necessaries, more than she would have had if she had herself originally left him without cause. See *Child* v. *Hardyman*, 2 Stra. 875; *McCutchen* v. *McGahay*, 11 Johns. 281; *McGahay* v. *Williams*, 12 Johns. 293.

And it makes no difference that he desires her to change her residence, and to go to live with him at some other place, not unsuitable for her residence, since he has the right to choose his own residence, and it is the duty of the wife and children to conform to his wishes in this respect. *Rumney* v. *Keyes*, 7 N. H. Rep. 571; *Kimball* v. *Keyes*, 11 Wend. 32.

But it is objected that the evidence fails here to show any wish or effort, on the part of the husband, in good faith, to seek a reconciliation, or that his wife should return to live with him again, and the conversation between him and his family, about the first of May, is relied upon to disprove any such wish on his part. This is the same conversation, prov-

ed on the part of the defendant, to show his desire for a reconciliation. We have, therefore, considered with care what was then said, and our conclusion is, that what was said by the husband, on that occasion, completely disproves any sincere wish that his wife and daughters should remove to his residence, to live with him. It was a formal request to them to go to his house, but it was accompanied with such threatening language, and such unreasonable claims upon them, as were calculated, and, as it seems to us, must have been designed to prevent their removal. The effect of the whole conversation, as it impresses our minds, is rather a notice to them not to come to his house, a threat of undefined evil, if they did come, rather than a sincere invitation to them to come.

If the separation had been previously by mutual consent, it seems to us it might be properly regarded as a separation compelled by the misconduct of the husband, after such an interview. But it is not necessary to go farther than to say that the separation having been originally the act of the husband, the position of the parties was not at all changed by the request to remove to his residence, and live with him, accompanied by such conversation. The operation of this was to neutralize the whole effect of the application, to stamp it with a want of good faith and sincerity, and to leave the parties in the same situation as if he had said nothing.

The husband has the right to select the place where he will provide for his family, provided it is not unsuitable to their condition and to his means, and they are bound to receive it there; but it is never sufficient for him to notify them that he has made provision for their support at a given place, to relieve himself from their support, if they decline going there. If others have furnished them with necessaries, he must further show that he had in fact made suitable provision for them there. In this case, there is no evidence of any such provision, and in consequence of the want of it, the whole

matter of the notice to his wife and family to go to his house to receive their support, fails as to this plaintiff.

The notice in the newspaper is also without effect as to the plaintiff, since there is here no proof tending, in the slightest degree, to show that it ever came to his notice. *Kimball* v. *Keyes*, 11 Wend. 32; 1 Bac. Ab. 488; *Fredd* v. *Ewes*, 4 Harr. 385.

A bill for bread, charged in the plaintiff's account, was presented by the baker to the defendant for payment. This fact is evidence tending to show that the bread was furnished by the baker, on the defendant's credit, and not by the plaintiff. If it was a case of doubt, it would deserve to be weighed, but the present is not such a case. The auditor finds expressly that the bread was furnished to Mrs. Laighton, by the plaintiff's order. He was, of course, responsible to the baker, and the baker is to be regarded merely as his agent in the delivery of the bread. The presentment of the bill to the defendant was entirely immaterial to the plaintiff.

*Judgment on the report.*