## Town of Rumney *vs.* Charles Keyes.

Where the defendant's wife, living separate from the husband, had become poor, and unable to maintain herself, and was assisted by the town, *it was holden* that an action would lie at common law in behalf of the town, to recover of the husband the amount of the expenditures incurred on her account.

That it was immaterial whether the wife applied on her husband's credit or not; that a legal obligation rested on the husband to supply his wife with necessaries for her support, and if from his neglect to furnish such necessaries they were supplied by the town, the defendant was liable on an implied promise of payment.

That where such support was furnished by the town to a wife living separate from her husband, proof of her marriage with the husband, and that the articles furnished were necessaries for her support, constituted *prima facie* evidence of the liability of the husband, and of his promise to pay, which he could rebut by evidence that her separate residence, and want of means of support, was through no fault on his part.

If a husband, living in a state of separation from his wife, suffers his children to reside with the mother, he is liable for necessaries furnished them, and she is considered as his agent to contract for this purpose.

This was assumpsit, for the support of the defendant's wife and child from March, 1833, to March, 1834.

The cause was tried at the November term of the common pleas, upon the general issue, and a verdict was taken for the plaintiff, subject to the opinion of the court upon the following case.

The defendant is an inhabitant of Rumney, and was married on the 18th May, 1820, and has one child by his wife. The husband and wife have never lived together, nor has he ever made any provision for the support of the wife and child. In March, 1833, the wife being sick and unable to support herself and child, made application to the selectmen of Rumney for assistance, and they supported both the wife and the child, from March, 1833, to March, 1834, but gave no notice to the defendant, so as to charge him under the statute for the support of poor persons. On these facts the case was transferred to this court for decision.

*Quincy*, for the plaintiff, contended that if the husband abandoned the wife, or if the husband and wife separated by consent, without any provision for her maintenance, or the husband sent the wife away—in either case, he gave her a credit, and was liable for all necessaries furnished her.

That it was not competent for the defendant to take the exception that the plaintiff could not as a corporation incur the liabilities set forth in this case: That the plaintiff had furnished a support which it was the duty of this defendant to have rendered, and as a corporation they could bring a suit for such an expenditure. As the money had been paid by them for the defendant's benefit, and in fact by his contract, he could not contest their corporate right to sue for and recover the claim.

He also cited the following authorities: 2 *Stark. Ev.* 692—700 ; 13 *Johns.* 480 ; 14 *Mass. R.* 227, *Hanover* vs. *Turner ;* 4 *N. H. R.* 96 ; 3 *Bing.* 127 ; 5 *Barn. & Cres.* 375 ; 1 *Car. & Pay.* 502 ; 2 *Stark. Rep.* 86 ; 4 *Green.* 258 ; 4 *Barn. & Ald.* 252 ; 6 *Barn. & Cres.* 200 ; 5 *Bing.* 550 ; 3 *Barn. & Cres.* 631 ; 2 *Car. & Pay.* 507.

*Bell*, for the defendant.

1. There is no contract in this case between these parties. There is no request on the part of the defendant to the plaintiff to support his wife and child.

The case finds that the defendant is an innkeeper in Rumney: That the husband and wife have never lived together, and that he has never made any provision for the support of his wife and child. There is no doubt of the law of the case. "If the husband *abandons* the wife, or if 'they separate by consent, without any provision for her 'support, or if he sends her away, he is liable for her neces- 'saries, and he *sends credit with her to that extent."* 2 *Kent's Com.* 124.

But in this case there is no evidence that the husband abandoned the wife, or that they separated by consent, or

that he sent her away. She may have eloped, or refused wrongfully to live with him, for aught that appears. How, then, is the husband to be charged? All persons supplying food, lodging, &c., are bound to make enquiries, or give credit at their peril. 2 *Kent's Com.* 124.

Nothing appears in this case, but that the husband and wife never lived together. But nothing is stated to show who is in fault. If the plaintiffs are innkeepers, or shop-keepers, they are bound to enquire, where they furnish goods to a wife living separate from her husband, and are bound to show affirmatively that he has either abandoned the wife or sent her away, that they have agreed to live separate, &c. Nothing of all this appears in this case, and nothing can be inferred, from what does appear, as to the cause of separation. It is as likely to be her fault as his, in which case the plaintiffs could not recover.

2. But if she were sent away, &c., this would merely authorize her to use her husband's credit and make contracts to bind him for necessaries for herself. This is the whole extent of the law.

But the wife very clearly did not apply to the selectmen to pledge her husband's credit for necessaries. She made no bargain to bind him. She made no attempt to make a bargain on the subject. She was sick, and in want, and she applied to the selectmen under the law calling upon them to support all who are poor.

This was evidently the understanding of both parties; and in such cases the law *implies* no *contract*, but the reverse. The application is to the selectmen to perform a *legal* duty, and not to make a contract with them. If the facts in her case would have warranted the proceeding, and the selectmen are by law competent to make such contracts, the wife might have made a contract to bind the husband. She is entitled to use his credit with any one who will trust him, and if no one will trust *him*, she is then a pauper, and is entitled to support as such.

But in this case no bargain was made. She made no application for assistance to the selectmen. She made no bargain with them on her husband's account or credit.

3. The town has no legal capacity to make contracts for support, or trade in goods, &c., except under the statute.

The statute of December 16, 1828, sec. 11, enacts, "That ' where any person, in any town in this state, shall be poor, ' and unable to maintain him, or herself, such person shall ' be relieved and maintained by the overseers of the poor of ' the town where such person shall happen to be. And in ' case such town is not by law chargeable with the maintain- ' ance of such poor person, they may by action recover of ' the town or person chargeable by law with the maintain- ' ance of such poor person all such sums as they shall have ' expended in the maintainance of such poor persons. Pro- ' vided, in all cases, notice shall be given to the person by ' law chargeable", &c. 1 *N. H. Laws* 305, *sec.* 11.

Here is a plain statute remedy, if the plaintiffs have a proper case. If the defendant's wife, abandoned and sent away by her husband, could not obtain necessaries for her support, on his credit, and actually stood in need of relief, it would be the imperative duty of the plaintiff to furnish her such support as they must all other paupers ; and in that case, if the husband is by law liable for her support under the circumstances, they would have a plain statute remedy for what they so furnished. All parties would act under the responsibilities of a known and plain statute provision.

But towns have no statute, or other power, to furnish meat, drink, lodging, washing, medicine, &c., to any person under any other circumstances than such as the statute of 1828 points out ; and there is no occasion that they should have.

They have no right to enter into the trade of merchandize, keep boarding-houses, or traffic in any manner, or for any purpose except under the statute. They have not the

general powers of natural persons. Their powers are coëx- <span style="float:right">Rumney<br>*vs.*<br>Keyes.</span>
tensive with their duties, but not more so. They have
power to do all the statute makes it their duty to do, but
nothing more.

Now, the statute gives neither to towns nor selectmen an
authority to extend a credit to married women on their hus-
bands' account, when such women may need relief. If
their husbands' credit is not sufficient to afford relief to such
women, they are then paupers, and to be provided for as such.
Both parties, and all parties, act under the obligations im-
posed by law. The selectmen are bound officially to judge
what is necessary for relief, and to what extent,—and they
have a right to control, and apply in a proper manner, the
relief furnished to the applicant.

This we say the defendant had a right to demand of the
town. If they undertake to furnish necessaries for the sup-
port of his wife, they must do it on the responsibility of
their official organs, and on their best judgment.

But is said the case of Hanover *vs.* Turner is a case in
point for the plaintiff. This we deny, both in fact and in
law. We say, in the first place, the facts were not as in
this case, and that if they were, the law of that case cannot
be sustained here. In that case, the defendant turned his
wife abroad on the world by his cruel treatment. It does
not appear in this case why the parties do not live together,
or which is in fault.

It also appears in that case that the supplies were furnish-
ed on the husband's credit. The wife in her application for
relief made it on the footing of her husband's credit and re-
sponsibility expressly. This fact, which we deem material,
is wholly wanting in this case. She may have power and
right to charge the husband, but she must make her contract
in such manner as to charge him ; and it must be so under-
stood at the time, or he will not be charged. It is her con-
tracts *purporting* to charge him that he is bound to fulfil.
2 *Kent's Com.* 124. In this case there is no such contract.

But the case of *Hanover* vs. *Turner*, 14 *Mass. R.* not only differs from this as to the point in question, but it does not appear that their statute, as to notice before suit, is like ours. There is no such provision in their statute of 1793, or any other statute that I have examined. The case is, therefore, neither in point as to its facts, or the law, and cannot be entitled to much consideration in determining the present case.

4. All that has been said in regard to defendant's discharge from the support of the wife applies also to the child. There is nothing stated to shew the age or condition of the child, or whether able to support itself or not.

The general duty of the father to support his minor children is not contested. 2 *Kent's Com.* 161. But there must be a clear omission of the duty of the parent. It must so appear, before third persons are at liberty to furnish on the father's credit. 2 *Kent's Com.* 162.

UPHAM, J., delivered the opinion of the court.

It is not contended that the assistance rendered in this case was granted in such manner as to render the defendant liable to the town of Rumney, under the statute providing for the support and maintainance of the poor. Such towns and persons as are holden liable for any of the provisions of that statute, are entitled to notice served on them prior to any suit,—signed by a majority of the selectmen or overseers of the poor, stating the sums expended for the relief of the pauper; and no liability is imposed by that act on individuals for the support of poor relations, except in the line of father or grandfather, mother or grandmother, children or grandchildren. The statute contemplates no claim by the town against a husband for expenditures in behalf of his wife as a pauper. Any claim which a town may have against a husband for such support depends solely upon the provisions of the common law.

It will be seen, however, that the statute imposes a bur-

then of assistance and support on the individual *unknown* to the common law ; such as the support of parents, grandparents and grand children. Its object was, therefore, to compel an assistance beyond what the common law would enforce, if any compulsion were necessary in those cases where the ties of kindred would so readily prompt to such charity. It could not, therefore, have been the design of the act to supersede the ordinary obligations of the common law in those cases where no statute regulation was necessary ; and such would be its effect if towns, who are the constituted almoners of public charity, were deprived of resorting to its provisions to enforce their claims.

No reason can be assigned why an individual should be holden liable at common law for all necessary supplies furnished by any citizen to his suffering wife or child, arising from his neglect to make such provision, while the town, whose especial duty it is to grant such relief, should be debarred from such remedy.

It is said the power of towns is only coëxtensive with their duties : That they have power to do all that the statute makes it their duty to do, and nothing more. This is undoubtedly the case ; but it is their duty to render assistance to those who are poor, and stand in need of relief ;—and they have the benefit of the common law, with the additional requisitions of the statute, to compel those to aid them in their work of public charity who have the ability to do this, and on whom the natural obligation rests.

It is urged, that no request was made, on the part of the wife, for assistance, with a pledge of the husband's credit, and that no implied contract could arise with the husband in such case. But in our view of the law, if the wife needed relief, or asked it, or if she merely needed it, though not in fact an applicant for charity, it would be the duty of the selectmen to render her assistance ; and all supplies and assistance furnished her would constitute as binding a claim upon the husband, provided he was in other respects liable,

as if the assistance was rendered directly to himself on his own request. There is an abundant consideration for an implied promise necessarily resulting from the obligation of the husband's relation, and the fact of assistance rendered. Ordinary credits to the wife, living apart from the husband, and not in a state of poverty and needing relief, but made expressly to herself, would come within a class of cases entirely different from the present.

But admitting the law to be as stated, it is said the case is still deficient of the necessary facts to bind the husband ; that there is no evidence of an abandonment of the wife by the husband, or of a separation by consent, or that the husband sent the wife away,—some one of which causes of separation is holden to be an essential pre-requisite to the liability of the husband.

It must be considered as settled, that the husband is bound only to make suitable provision for his wife at his own home ; and if she wilfully abandons him she carries with her no credit of the husband, and can impose on him no liability ; but it admits of doubt on whom is the burthen of proof to show the cause of separation.

In the case, *Mainwaring* vs. *Leslie*, 2 *Car. & Payne* 507, it was ruled by chief justice Abbot that if a tradesman bring an action against a husband for goods furnished to his wife while she is living absent from her husband, it is for the tradesman to show that she was absent from some cause which would justify her absence ; and in *Hindley* vs. *Westmeath*, 6 *Barn. & Cres.* 200, the ensuing year, it was said, by the same justice, in which opinion the other judges concurred, that a person cannot by law sue a husband for the price of goods furnished to his wife, when living separate and apart from him, unless it can be shown that she was so living with his consent.

These cases would seem to impose the burthen of proof upon the plaintiff in the suit, and are the only authorities which we find expressly on this point, and in the second case

named this point was not in issue. The authority in *Kent's Com.* 2 *vol. p.* 147, which has been cited for this purpose, does not necessarily sustain this position. It alleges that any person supplying the food, lodging and raiment, of a married woman, living separate from her husband, is bound to make enquiries, and that he gives credit at his peril. The substance of which law seems to be that the person making such provision is not entitled *to notice* of a want of liability on the part of the husband, and that any supplies furnished must be at the peril of such defence as he may set up. We are the more inclined to this construction, for the reason that in the cases so far as we have examined them, with the exception of that in 6*th Barn. & Cress.*, the cause of separation, when it has been to the prejudice of the wife, has always been assigned by the husband in *defence* to the claim made against him.

In *McCutchen* vs. *McGahay,* 11 *Johns.* 281, the case finds that *the defendant proved* that his wife, without any misconduct on his part, left him, and refused to live with him. In *Morris* vs. *Martin,* 1 *Str.* 647, *the defendant proved* that his wife went away from him with an adulterer. In *Hindley* vs. *Westmeath,* 6 *Barn. & Cress.* 200, it was in evidence from the defendant, that the wife left against the defendant's wishes, and continued to live apart from him.

In *Child & al.* vs. *Hardyman,* 2 *Str.* 875, on *non assumpsit,* the delivery of the articles was proved, and *the defendant proved* that the wife had been guilty of gross misconduct, and had eloped without fault on his part.

In *Lidlow* vs. *Wilmot,* 2 *Stark. Rep.* 86, the cause of separation was not assigned. The court say, "it does not appear what the original cause of separation was;" but no exception was taken as to this point, and the plaintiff failed to recover, on the ground that the wife had funds of her own sufficient for her support, and this rebutted the idea of any implied promise.

In 2 *Stark. Ev.* 696, it is said that the plaintiff in an ac-

Rumney
*vs.*
Keyes.

tion for necessaries supplied to the wife, must prove the marriage, and also, where that is the fact, that the husband turned the wife away ; but he also says that mere proof of the marriage is *prima facie* evidence of the husband's liability, and it lies upon him *to discharge himself* by evidence. In *Petersdorf's Ab. 4 vol.* 141, in a note by the editor as to evidence in actions against the husband, it is said, "in order to support an action against the husband for articles supplied to his wife, the marriage must be proved, either by evidence of cohabitation, repute, confession, or otherwise ; and 2nd, it must be proved that the goods supplied were necessaries according to the husband's situation in life. To defeat this evidence, the defendant may prove that his wife eloped, and committed adultery, or that he allowed her a separate maintainance, or that she had funds of her own, adequate to her support."

We are of opinion that proof of the marriage, and that the articles were necessaries suitable to the condition of the husband in life, is *prima facie* evidence of the husband's liability, and it rests upon him to rebut the presumption in law arising from the obligation of such relation, and expenditures.

Were the defendant released from payment of expenditures for the wife, he would still be liable for such expenses as were incurred in necessaries for the child. The case comes within that of *Rawlins* vs. *Van Dyke*, that if a husband, living in a state of separation from the wife, suffers his children to reside with their mother, he is liable for necessaries furnished them ; for as a father, he has a right to the custody of his children, and may obtain possession of their persons by *habeas corpus ;* but where he does not assert that right, and suffers them to remain with their mother, he thereby constitutes her as his agent, and authorizes her to contract debts for clothing and necessaries. 3 *Esp. Rep.* 252 ; 2 *Kent's Com.* 193.

The brevity with which this case was drawn, has occa-

sioned some unnecessary difficulties in considering it. The facts as stated, leave little doubt that the abandonment was on the part of the husband, but this is not explicitly shown. Sufficient, however, appears to compel the defendant to set up some defence to the claim, and, as he does not, there must be

*Judgment for the plaintiff.*