Hillsborough-southern judicial district
No. 2010-846

ANTHONY HAYES

v.

SOUTHERN NEW HAMPSHIRE MEDICAL CENTER

Argued: September 22, 2011
Opinion Issued: November 29, 2011

*Smith-Weiss Shepard, P.C.*, of Nashua (*Melissa S. Penson* on the brief and orally), for the plaintiff.

*Welts, White & Fontaine, P.C.*, of Nashua (*George H. Thompson, Jr.* on the brief and orally), for the defendant.

CONBOY, J. The appellant, Anthony Hayes (Anthony), appeals an order of the Superior Court (*Lynn*, C.J.) denying his petition to enjoin sheriff's sale and finding valid and executable the prejudgment attachment of the appellee, Southern New Hampshire Medical Center (SNHMC), on certain rental property owned by him. We affirm.

The following undisputed facts are drawn from the record and *Southern New Hampshire Medical Center v. Hayes*, 159 N.H. 711 (2010). The petitioner and his wife, Karen, were married in 1977. *S. N.H. Med. Ctr.*, 159 N.H. at 713. In 2006, Karen, who did not have health insurance, received emergency medical treatment at SNHMC for complications stemming from alcoholism, resulting in a balance due of $85,238.88. *Id.*

In November 2006, SNHMC filed suit in superior court against the Hayeses for Karen's unpaid medical expenses. At the same time, SNHMC petitioned to attach a portion of the couple's real estate. *See id.* When SNHMC initiated its civil action, the Hayeses owned, as joint tenants with rights of survivorship, two unencumbered parcels of real estate — a rental

property in Amherst (the Amherst property) and their primary residence in Merrimack (the Merrimack property). The attachment petition was granted and it was recorded on November 30, 2006. In January 2007, SNHMC petitioned to attach another parcel of the couple's real estate. This petition was also granted, and the attachment was subsequently recorded.

By order of March 28, 2007, the Trial Court (*Brennan,* J.) granted SNHMC's motion for summary judgment against Karen in the amount of $85,238.88, plus costs, but denied the motion as to Anthony. *See id.* at 714. Following a bench trial, the Trial Court (*Smukler,* J.) entered judgment against Anthony in the same amount — $85,238.88 — under the doctrine of necessaries. *See id.* Both judgments were appealed. *Id.* at 713. On February 11, 2010, we affirmed the grant of summary judgment against Karen, but reversed the judgment entered against Anthony and remanded the matter for a new trial. *Id.* at 713, 716, 721.

During the pendency of these proceedings, on January 18, 2007, the Hayeses were divorced pursuant to a stipulated agreement. Under its terms, each was responsible for his or her own medical expenses not covered by insurance. *Id.* at 713. Specifically, "Karen was responsible for paying the debt to SNHMC as well as any other medical debts or bills." *Id.* (brackets omitted). Karen received one automobile valued at $1,200 and her bank account with a balance of $0.00. *Id.* Anthony was awarded the Merrimack and Amherst properties, which he acknowledged were subject to SNHMC's attachments. *See id.* Pursuant to their stipulation, on January 22, 2007, Karen quitclaimed the Amherst and Merrimack properties to Anthony. On August 25, 2007, Karen died.

In the spring of 2010, SNHMC obtained limited probate administration for the purpose of requesting a writ of execution to "proceed with a Sheriff's sale on . . . [the Amherst property] in order to satisfy its judgment against Karen W. Hayes." On July 20, 2010, the superior court issued a writ of execution for $88,849.59. Subsequently, the sheriff's sale for the Amherst property was scheduled for November 30, 2010.

On November 29, 2010, Anthony filed a Petition to Enjoin Sheriff's Sale and for Declaratory Judgment. The Trial Court (*Nicolosi,* J.) enjoined the sale, contingent upon Anthony posting adequate security, and scheduled a further hearing. After that hearing, the Trial Court (*Lynn,* C.J.) concluded that "SNHMC's attachment of Karen Hayes's interest in the Amherst property remains valid and that SNHMC is entitled to execute against the property to satisfy its judgment against her."

On appeal, Anthony contends that, because Karen quitclaimed her interest in the property prior to entry of final judgment against her, the trial court erred as a matter of law when it failed to find that Karen's death terminated SNHMC's prejudgment attachment. SNHMC counters that

the trial court's order was supported by the evidence and was not erroneous as a matter of law. Specifically, SNHMC maintains that Karen voluntarily severed the joint tenancy when she quitclaimed the Amherst property to Anthony, creating fee simple title in Anthony subject to its attachments.

We will affirm the trial court's factual findings unless they are unsupported by the evidence and will affirm the trial court's legal rulings unless they are erroneous as a matter of law. *Sutton v. Town of Gilford*, 160 N.H. 43, 55 (2010).

■ ■ A joint tenancy with right of survivorship is a unique type of property ownership. Joint tenants are said to have a unity of title and of interest as well as of possession. *See Wentworth v. Remick*, 47 N.H. 226, 226 (1866). Each joint tenant has full ownership rights. 17 C. SZYPSZAK, NEW HAMPSHIRE PRACTICE, REAL ESTATE § 5.03, at 100 (2003). The distinguishing feature of a joint tenancy is the survivorship right, by which a surviving joint tenant succeeds to the entire real estate upon the death of the other joint tenant. *See id.*; *see also Boissonnault v. Savage*, 137 N.H. 229, 231 (1993). However, a joint tenant may alienate or convey her interest in the property, and thereby defeat the right of survivorship. *Boissonnault*, 137 N.H. at 231; *see also Mulvanity v. Nute*, 95 N.H. 526, 528 (1949). Here, Anthony concedes that Karen severed the joint tenancy when she conveyed to him, by quitclaim deed, her interest in the Amherst property. Accordingly, as a result of the severance of the joint tenancy, Anthony had no right of survivorship upon Karen's death. *See* 17 C. SZYPSZAK, *supra* § 5.03, at 100 ("If a joint tenant conveys his or her interest in the property, the joint tenancy is said to be severed and the owners become tenants in common."); *see also Wentworth*, 47 N.H. at 227. Anthony also concedes that Karen quitclaimed her interest subject to SNHMC's attachment. Nevertheless, Anthony maintains that Karen's death extinguished SNHMC's attachment on the Amherst property.

Relying on *Roaf v. Champlin*, 79 N.H. 219 (1919), Anthony urges us to "[f]ocus[] upon and follow[] Karen's *interest*" at the time SNHMC attached the property. He contends that "when SNHMC attached the Amherst property then jointly owned by Karen and Anthony Hayes, it could only attach the *interest* that Karen had in that property" and "[b]ecause, at the time of the attachment, Karen's *interest* in the Amherst property was that *as a joint tenant with right of survivorship, and the attachment was based upon that same interest*, the attachment terminated at the moment of her death."

In *Roaf*, the plaintiff creditor attached real estate in which the debtor held a remainder interest. *Id.* at 221. Before the debtor obtained his

remainder interest, however, the tenants of the life estate legally conveyed the real estate to a third party. *Id.* We held that "[t]he plaintiff, by his attachment of all the real estate of [the debtor], could not acquire any greater interest than [the debtor] had." *Id.* Accordingly, because the debtor's remainder interest never materialized, the plaintiff acquired no interest by attaching the real estate. *Id.* at 224.

Anthony asserts that, here, as in *Roaf*, since the creditor's attachment was conditioned upon the debtor's continued interest in the property, SNHMC's attachment is similarly contingent on Karen's continued interest in the Amherst property. Just as the conveyance extinguished the debtor's remainder interest in *Roaf* and consequently the creditor's attachment, Anthony argues Karen's death terminated her interest and in turn SNHMC's attachment.

█*Roaf*, however, is distinguishable. Unlike the debtor in *Roaf*, who only had a future interest in the subject property, at the time of SNHMC's attachment, Karen had a present, alienable interest in the property; namely, an undivided one-half interest. *See Rodman v. Young*, 141 N.H. 236, 238 (1996) ("It is the [debtor's] interest in the real estate at the time the attachment was originally made, and the lien resulting therefrom, that controls . . . ."). Therefore, unlike the creditor in *Roaf*, SNHMC did not attach a contingent interest. Thus, we are not persuaded by Anthony's assertion that we should "[f]ocus[] upon and follow[] Karen's *interest*" and disregard her *inter vivos* conveyance to Anthony, which defeated his right of survivorship.

Anthony further argues that this case is controlled by *Beland v. Estey*, 116 N.H. 8 (1976), and that the trial court erred in finding *Beland* distinguishable. Relying on *Beland*, he argues that Karen's death extinguished SNHMC's attachment since a sheriff's sale was not conducted prior to her death. We agree with the trial judge that *Beland* is distinguishable.

In *Beland*, the plaintiffs became "creditors" of the defendant, Bernard Estey, within the terms of RSA chapter 545 (the predecessor of the Uniform Fraudulent Transfer Act, RSA chapter 545-A), when their property, on which Bernard was working, was damaged by fire allegedly caused by his negligence. *Id.* at 8. Several months later, Bernard conveyed to his wife his interest in property they held jointly. *Id.* at 8-9. The plaintiffs then brought a bill in equity to set aside as fraudulent Bernard's conveyance to his wife. *Id.* at 8. The trial court dismissed the plaintiffs' bill, finding the conveyance did not violate the statute. We did not indicate whether the trial court stated reasons for its finding. *Id.* Subsequently, during the pendency of the appeal, Bernard died. *Id.*

In affirming the trial court's dismissal order, we explained that if we upheld the plaintiffs' contention that the conveyance was fraudulent as a matter of law,

> [the] plaintiffs would be entitled to have it set aside to enable them to levy on Bernard's interest in the property as it stood before the conveyance. During the joint lives of the defendants Bernard's share was subject to attachment by the plaintiffs. The interest attached is similar to a life estate with a contingent remainder in fee depending upon which joint tenant survived. However, to obtain this interest plaintiffs would have had to obtain a judgment, levy thereon and sell Bernard's interest during his lifetime.

*Id.* at 9 (citations omitted). The record established, however, that this did not happen. *Id.* Further, there was no evidence that Bernard's wife was subject to any claims by the plaintiffs. *Id.* We concluded, therefore, that at Bernard's death, his wife became the sole owner of the property free and clear of any interest of the plaintiffs. *Id.*

■ Anthony argues that, similar to the plaintiffs in *Beland*, SNHMC did not obtain a judgment, levy thereon, and sell Karen's interest in the Amherst property during her lifetime. Thus, he contends, the condition of the attachment, Karen's survival, was not satisfied, and therefore it lapsed. Anthony fails to acknowledge, however, the key distinction between *Beland* and this case. Here, SNHMC's prejudgment attachment was obtained and recorded during Karen's lifetime and while she held the property jointly with her husband.

■ RSA 511:17 (2010) provides:

> No attachment of any interest in real estate shall be defeated by any change in the nature of the debtor's right thereto, as by redemption of a mortgage or other encumbrance or the execution to the debtor of any conveyance pursuant to a contract, but the whole interest of the debtor, upon such change, shall be held by the attachment.

*See, e.g., In the Matter of Jasper-O'Neil & O'Neil,* 149 N.H. 87, 88-89 (2003); *LeBlanc v. Berube,* 141 N.H. 597, 598 (1997); *Rodman,* 141 N.H. at 238; *Beland v. Goss,* 68 N.H. 257, 258 (1894). Thus, when Karen severed the joint tenancy and conveyed her interest in the property to her husband, she did so subject to SNHMC's attachment. *See* 4 R. WIEBUSCH, NEW HAMPSHIRE PRACTICE, CIVIL PRACTICE AND PROCEDURE § 17.24, at 17-29 (2010) ("If the debtor's interest is conveyed or extinguished as between the debtor and

a third party, the transaction is nevertheless ineffective to remove the attachment lien from the property, and the new state of ownership holds title subject to the attachment.").

*Affirmed.*

DALIANIS, C.J., and DUGGAN and HICKS, JJ., concurred.